May it please the court. My name is Norman DuPont. With me at council table today are Cody Parker and Luis Vega, who assisted in the briefing in this case. Together, we represent the City of Perris. What's born in the flesh is born in the bone. And in this case, the City of Perris started as a railroad stop station with a railroad running through the town. Today, the City of Perris is on one large side bounded by the Interstate 215 freeway, which I will call the Interstate. There are two ordinances, as this court knows, that And I would suggest, because the ordinance itself is sometimes separated from the language that follows the ordinance, that the best way to locate and review the ordinance with the language that amended the two parts of the municipal code are through our statutory appendix. Exhibit A covers the statutory appendix for Ordinance 1460, which dealt with regulation of marijuana dispensaries within the city. Exhibit B to our statutory appendix relates to Exhibit A to Ordinance 1461, which dealt with a limitation on advertising signage not directly related to the marijuana dispensaries within the city itself. We contend that there are three reasons why this court should reverse the district court's preliminary injunction. But before I get there, and this court has raised other questions earlier about, is there another way to rule? The big question is, which law? Both my opponent and I talk about whether it's federal law or state law. There is, however, we submit a second way to get there using, I think, the metaphor of Alexander's sword cutting through the Gordian knot. And that is, if this court finds and agrees with our statutory interpretation of California Business and Profession Code 26152d, then we submit it may not make a difference because Business and Profession Code 26152d limits advertising as a matter of California state law of cannabis products on an interstate highway. So can I ask, I'm very confused about this argument about the state law and what work it's doing in your case. Are you saying that they sued the wrong person? They should have sued the state instead of the city because it's really the state that's making this illegal? What are you trying to get at with this argument about the state? What we're trying to get at is that the city is conforming with state law and that as to the California Constitutional, the third clause of action, the city is complying with state law. And there hasn't been an argument that that state law violates either the California Constitution or the federal First Amendment provisions. If their theory is correct, then the state law would also be unconstitutional under the federal constitution, right? If our theory... If the state law does also prohibit the billboards, then under the billboard company's theory of this case, wouldn't the state law be unconstitutional too? They would have to argue that. They have not argued that. But couldn't they sue you in this case and sue the state in a different case? I don't understand why the idea that they might also have a problem with the state law prohibits them from suing you in this case. It's not a matter of prohibiting from suing. It's a matter that we think federal law applies and pertains. But even if they wanted to say, well, city, you're also in violation of the California Constitution, which is their third clause of action, our response to that is, no, we are not. Please see business and profession codes. But the state law could be in violation of the state constitution too. It could be. That's not an argument that was made in any of the briefing anywhere. Because they haven't sued the state here. They've sued the city. So we have to deal with whether the city laws are okay in this case. And if they also need someday to sue the state, they could do that separately. They can sue that separately. It was not a basis of the district court's preliminary injunction. That the state law could be unconstitutional is a potential argument. I grant you, Justice, Judge Friedman. But that was not an argument made by Lamar. It was not the basis of the district court's preliminary injunction. I mean, I want to jump in here because I've had the same confusion that Judge Friedland is talking about. And frankly, I've spent a great deal of time trying to unwind what is going on with the state claim. So I'm going to say what I think your argument is. And I want you to tell me if I'm wrong. I understand your argument to be their state constitutional claim can't win because we are following state law, statutory law. Is that argument? That is the argument with one caveat, with the caveat that they have not sought to challenge the state law. I understand that. But so then going, I think Judge Friedman has made this point. I don't understand your argument because you can say that something is unconstitutional, even if it's following a statute, because the Constitution trumps statutes. Correct. So so I do not understand your argument. Well, let me go back. The argument is that if they were arguing and they did argue that Business and Professions Code 26-152 is inapplicable and therefore gives the city no basis for coverage. Our argument is that is wrong. 26-152 does give coverage. But if I could move, Your Honor, our basic argument on constitutionality is that federal law should be the basis and source of the decision here. And federal law, as this court has found in innumerable cases, U.S. v. Nixon, the McIntosh case, and the Supreme Court's decision in Gordon v. Raich, all state that regardless of the current political disposition, pro or con as to the use of marijuana, the law is still federal law precludes use of medical marijuana. OK, I want to step back a couple of steps. Sure. So this claim is being brought under the commercial speech doctrine, because that's the kind of speech that we're talking about. And so then the as we start our analysis steps, we have to figure out, is it lawful and where do we go to figure out lawfulness? Putting the facts of this case aside, as a general matter, what does the law tell us in terms of what is the source that you look at for under any any commercial speech case? Law generally says it's the jurisdiction you're in, but OK, here's I want to like so you would agree that our starting premise is generally state law. Correct. But the critical point is those are cases that are decided where there is no conflicting federal law. OK, I agree. So OK, so if we can if we start with the premise of we are in a commercial speech case, we have to decide if the speech at issue is lawful or is it dealing with a lawful activity? We are starting point is state law. And then what is the rule that tells us when we have to switch and look to federal law instead? Is the supremacy clause like what is your legal hook to we are moving away from the presumption of state law and now to federal law? It is federal law based on the Supremacy Clause, Article 6, Clause 2. And it is also federal law when you have a situation that in all 50 states, as this court has observed in U.S. versus Nixon and McIntosh, in all 50 states, these encouragement, distribution and marketing of marijuana is illegal under federal law. Can I ask? So you agreed with Judge Forrest that we would usually look to state law, but I guess I had read the cases as we look to the law of the entity that is doing the commercial speech regulation. So here it's the city that's doing the regulation. So why wouldn't we look to the city's laws? And if we're looking to the city's laws, why wouldn't we treat the city as treating marijuana as legal because you're benefiting from taxing it? Well, I don't believe that the law is that you do the local jurisdiction as the controlling jurisdiction. Otherwise, what you would have would be a complete balkanization of the First Amendment. But moreover, the city in its ordinance 1460 cited federal law, cited the fact in one of the whereas clauses that federal law bans marijuana and it used that as the basis. But the city isn't saying you can't sell marijuana in our city. That is correct. So regulations, yes. But the analysis of Central Hudson and Prong One that we're on now cannot it cannot turn on whether a particular municipality township is or is not allowing something as legal. What it must turn on is the law and the law in this case is clear. I mean, Central Hudson is about regulating commercial speech. We look at the law that's being challenged. The law that's being challenged here is a city law. And then we try to figure out in the city, is it a legal transaction? Is the city trying to stop people from learning about something that's a legal transaction? Isn't that what Central Hudson is about? Well, Central Hudson is about whether there is a legal limit on the otherwise opportune free speech. And in this case, focusing on for me, I think in this particular case, it may not matter because the state law and as you argued earlier, the city was trying to conform its local ordinances to the state law. So there is continuity as between the state and city laws. But what you're really arguing is that there is conflict with the federal law, that somehow the CSA preempts or should be given greater weight to the state law. Right. Okay. So I want to ask you, your friend on the other side filed a 28-J letter recently yesterday, a day before citing the recent Supreme Court case in Himani that very clearly indicates that there is no positive conflict between the CSA and state law. So what do we do with sort of what seems to be clear indication that these two laws, the state law and the Federal Controlled Substances Act can exist together? I disagree respectfully with your reading of Himani. Himani is, as the court knows, a Second Amendment case where the real question was whether a particular statute, 928 I believe was the number, that linked firearms in a home with some sort of abuse had a historic precedent sufficient to survive the Bruin standard that the U.S. Supreme Court has for limits on firearms. And the Supreme Court said in Himani, look, occasional use or once every couple of days use of marijuana in itself is not sufficient to meet the historic standard that the federal government argued in Himani, which was this is to the habitual drunk. And Judge Gorsuch for the opinion writing said, look, historic precedent of a habitual drunk is someone who's stumbling down, someone who's maybe had a conservatorship imposed on him or her. We're not going to dispute that we're not going to do that same historical analysis under the Second Amendment that they did in that case. But the point is there are things that are said in that case that inform what is the federal policy, what is the federal objective these days with regard to marijuana. Because you've said that we're only going to look at federal law in a commercial speech case if we have a Supremacy Clause issue. And under the Supremacy Clause, the federal constitution preempts, the federal constitution dictates that federal law must preempt if there's a direct conflict or somehow the state law is being an obstacle or impeding federal objectives. And so if there are no federal objectives in terms of enforcing marijuana law, how do we have the conflict here that would trigger the Supremacy Clause? Well, I respectfully believe that there are direct conflicts between the federal law, the Controlled Substances Act, and California's current regime. And I would point to the court at 21 U.S.C. Section 801. Section 801 has a series of findings about what Congress intended in passing the Controlled Substances Act. Right. So is your argument then, so of course, the CSA is on the books and marijuana is a listed substance under the CSA. We get all that. So you do have a technical argument that there is a conflict. My question is, under the Supremacy Clause, if the analysis is, is there an obstacle to federal objectives, does that analysis allow us to look beyond the text of a statute when the federal government has decided not to enforce its own statute? Well, first of all, Parenteau-Tree, decided in 2026 by another panel of this court, clearly states that regardless of the wave that may be perceived politically, that the CSA is still the law and still controls. But that's a dormant commerce case, not a speech case. But it involved someone trying to limit or to oppose Washington State's regulation saying it limits dormant commerce. The second thing I would cite to, and to address Judge Forrest's observation, is there are findings in 21 U.S.C. Section 801, and I'd like to just briefly touch on three of them. Finding number four, local distribution and possession of controlled substances contribute to swelling the interstate traffic in substances. Finding number five, controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible in terms of control between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed. Counsel, this is why I'm wondering if Hamani does say something relevant to our question, because yes, those were the federal government's stated objectives in the CSA. The federal government is now acting entirely contrary to those stated objectives in how it perceives and allows marijuana commerce in the states. And so Justice Gorsuch, in his opinion, says the federal government has not just tolerated state legalization, it has fueled it by various aspects of how federal policy is working, including budget matters and non-enforcement. And so if that's true, how is, you know, the federal government has allowed the cannabis markets to exist and thrive in the states. If that's true, then how is marketing saying, hey, we have this cannabis market, contrary to federal policy? Two points, Your Honor. One is federal government rule is subject to change any day of the week. And we cannot say, oh, as of this instance, it's okay. Therefore, it's not going to be because the law which we must enforce is based in the statutory terms, not whether Congress is pushing to enforce it in a particular thing. I would simply also cite before my time runs out, Perendot. As the discussion in McIntosh makes clear, the CSA continues to apply in all 50 states. That is a 2026 decision by this court. Hamani does not overrule and affect it. And I'd like to reserve the rest of my time, Your Honor. Good morning, Your Honors. May it please the court. My name is Ted Stream. I represent the appellee Lamar Advertising Company. We're here seeking the affirmance of the district court's opinion, which granted an injunction to my client. My client has 14 structures within the city of Paris, two faces each, total of 28 structures within a mile. There are another nine structures, two faces each. On those structures, some of them which are digital, there were cannabis advertisements. When the city, who has been involved in the center of the cannabis economy within its city since 2016, approximately 10 years later, restricted and restrained all advertising within the city on the highway and within a mile of the city, we brought an action under the First Amendment. I know this is a hypothetical that it's not the facts of this case, but what difference would it make if the city was not, in fact, allowing the industry to thrive within its city limits, but such activity is authorized by state law? How would that change? That is a very good question, Judge Desai. How does this, what looks to me like hypocritical treatment of the regulation, the fact that they're benefiting it economically, that they're issued licenses, they're regulating it, they're allowing it, how does that differ from the case? Well, we don't see any of the cases, in Cocroft, for example, which is the Fifth Circuit case, you didn't see the regulator being the one who was actually restraining the speech. When you see that, I think there are several problems with that. One is it demonstrates that the CSA has plenty of room to allow regulations for states and local government agency. Number two, it shows that they believe that it's legal. So we have- So in your view, this is really the best way to distinguish the Fifth Circuit's ultimate conclusion in its case? Well, I think that's one way. The other way is to realize that they didn't give, I think, a careful look at the reasoning behind Central- Hudson? Central-Hudson, they didn't look at the actual language of the CSA, the fact that it doesn't preempt anything unless it's a positive conflict, it doesn't preempt state regulation. They didn't carefully look at, I think, the purpose behind what the DOJ has been doing and the fact that the administration is changing it. We actually have all three branches of government making statements about the legality and allowing state regulations. We got Congress, who in, I think, 2014, defunded or said we were not going- on an appropriations writer said, we're not going to give any money to the enforcement of cannabis, the criminal enforcement of cannabis to states. And number two, we've got the DOJ, which recently in April of this year, reclassified cannabis as a level three drug. And in that reclassification, they essentially traced the state regulation and came to the conclusion that the states are doing a good job with regulating it and they used- So this history makes it very complicated. But the point that we can't just skip by that favors your opponent is that marijuana use is technically illegal under federal law. And so in terms of if we were to agree with the district court's ultimate reasoning here, I'm trying to think about how do you write the that, you know, you can ignore a technical prohibition under federal law when what, like, how do you write that rule to say that here it's fine, but maybe in other places it won't be? Well, I think you look at the same sovereign doctrine and you look at the, you know, you need to look at whether or not it's legal in the area. I think one of you, your honors, mentioned the fact that, you know, it was legal inside the city as being an issue. And we have, of course, Coyote Publishing, which is a case from this court, points out that in Nevada, where brothels were illegal and there was advertising for counties where brothels were legal, this court looked to that jurisdiction and said, we're going to allow communication, commercial speech. We're going to allow advertisements in areas where it is not legal for brothels where it is legal. So I think that the rule is you look to the same sovereign, you look to California, you look, in this case, Paris. But sorry, you just said two different things. I don't understand. Are we looking at the state or are we looking at the city? I think you're looking at both. What if the two were in conflict with one another? Where would we look? Well, I think you look, if the state, if the city is allowing it and the state is not allowing it, then I think that there may be a conflict with the state. But I think you would look to where the activity is taking place, much like- What if the state legalized marijuana, but a city says, not within our city limits, will we permit licensed manufacturers or distributors, we're not going to take in revenue from this industry within our city limits, and we're passing ordinances not allowing for zoning for those businesses to exist, then what? I think 44 Liquor Mart, I think Bigelow point to what to do in that case. And the answer is, if the state allows it, and the city doesn't, then you may have an argument that the speech is not legal. You may have that argument.  But if it's regarding a city, I apologize, just to finish the thought, Judge Freeland. If the city, let's take the city of Riverside that does not allow the sale of cannabis or the cultivation of cannabis, if there's an advertisement in there for the city of Paris, I believe Bigelow would say, you've got to allow that. It would be a violation of that. And I think if you look at the reasoning behind both 44 Liquor Mart, and if you look at the reasoning behind Central Hudson, it's not only to prevent misleading communication, but it's to allow truthful, the same power that allows a jurisdiction to restrict misleading, really encourages and requires that jurisdiction to allow truthful, non-misleading speech. Can I ask, are the billboards that we're talking about in this case, trying to advertise marijuana sales in Paris? Yes. Yes. So is there any reason to look at anything other than Paris is the one passing this law and Paris treats these transactions as legal? Like you were saying before we were looking at state and city, but it seems like here on these facts, is there any reason to look beyond the city? I don't think so. Yeah. Are any of the billboards advertising medical marijuana sales in Paris or is it all recreational or undistinguished? My understanding is that is the recreational use of marijuana. Again, 24 states have allowed that, California has, and my understanding is it is not necessarily medical use, but it is undistinguished. Undistinguished. Yeah. Okay. This whole issue about the state law, I personally am not sure it matters, but can I just ask a clarification? It seems like everyone is assuming that the highway is that 215 counts as an interstate, but 215 doesn't actually leave California. So why would it be an interstate? Well, that's an interesting question. You'd have to ask the Department of Transportation that. I believe it's a funding issue. That is my understanding. And there are about nine interstate freeways that are not interstate. But so is it clear that we should even think it is an interstate? I mean, the state law doesn't apply if it's not an interstate and it doesn't leave the state. It doesn't leave the state. It's designated by the federal government as an interstate highway. Why is it designated? I suspect, although I don't know and I can't cite you any authority, it's a funding issue. I can tell you that it is entirely internal and I can tell you that we deal with that business and profession code 26152 all the time. And I can tell you that there's no evidence in the record, because there is none, of the state ever citing us or any other billboard company for violating that rule, that statute within I-215. Maybe because they don't really think it's an interstate. Well, that's right. They don't think it crosses. I'm sorry. Let me if I could just finish that one thought. They don't think it crosses the California border and it doesn't. And again, we get into a very interesting serious canon, serious qualifier canon analysis, which I think this court has dabbled in before in the Nesha case, which I thought some of the arguments to apply that, because really what we're dealing with is the non-restrictive clause that say which crosses the interstate. And the question is, it says state highways and federal or interstate highways, which cross California borders. My understanding was California statute incorporated the use of interstate as defined by the federal government. I'm sorry. I didn't hear you. Judge Foster, could you repeat that? My understanding is that the California statutes incorporate the understanding of interstate as defined by the federal government. That's correct. And the federal government has defined it in a way where you can have a roadway that actually doesn't cross state borders and still be an interstate. That is correct. That is correct. And so it's applying the serious qualifier canon as the court talked about Nesha. And I think the Facebook case that we cited in the brief also applies that. And it's originally, I think it quotes the legal interpretation of documents from Brian Garner and Justice Scalia. It says where you have a group of short nouns followed by a restrictive clause or a non-restrictive clause, it applies to the entire series. And then it gives the example, which I think is interesting, which is, you know, life, liberty or pursuit of happiness shall not be abridged. And of course, that doesn't just apply to the pursuit of happiness. It applies to the entire series. And I particularly like the courts because I'm a Star Wars fan. The courts example of my friend who wanted to see an actor, director or producer, which was involved in the Star Wars series. Now, they're not just interested in seeing an actor or producer, but any of those which were involved in the Star Wars series. So I think really, if you look at this, if you look at the enforcement, there's no evidence that the state has ever cared about our advertising there. Number two, the serious qualifier canon applies. Look at the Facebook case. So counsel, if we disagree with you and interpret this statute to apply to interstates, however the federal government has decided to define them, and then highways that cross the border, what does that do to your state constitutional claim? Nothing. So why are we arguing about it so much? I don't know. It was brought up by Judge Friedland and I wanted to point out and then there was a question about interstate freeways. Aside from this argument, the briefing, like the briefing sort of like spent a lot of time trying to figure this out and which canon of statutory instruction. And if none of this even matters to your state constitutional claim, like what was all that about? Probably responding to the appellant and probably devoting too much time to an issue because what Judge Friedland said, her confusion was right on point. It doesn't matter for the analysis in Central Hudson. It's not asking that. In fact, you guys, I'm sorry, your honors, this court has even said that in, I believe it was the Metro Lights case, there was a comment that we don't, in Central Hudson, we don't look at the speech, we look at the activity. And I think your point was exactly right. Also, it doesn't even matter because you could think the state law is unconstitutional. So I don't understand why didn't your headline in your brief say, none of this matters. We'll challenge the state law later if they ever enforce it against us. Well, that was kind of our last heading is that it didn't matter because we're not talking about speech regulation here. We're talking about the legality of the activity itself, which in the speech is concomitant, right? Of the actual activity. If the activity is illegal, then the speech about it is going to be illegal. But if the activity, which is the sale of cannabis is legal, then the speech about it is going to be illegal. So the question is- Is your state constitutional claim just a commercial speech claim at the state level? Yes. No other theory of state constitutional law? That's correct. So in my, just my remaining time addressing the preemption argument, I mean, I think that the fact of the matter is the CSA itself, as I think the court knows, says that no provision of this subchapter shall be construed as indicating an intent on the part of Congress to occupy the field in which that provision operates. Unless there's a positive conflict between that provision of this chapter and the state law, so that the two cannot be, cannot stand together. So how would the CSA, so if the federal government was enforcing the CSA as to marijuana, would there be a positive conflict? That is a great question. The one which is not necessarily relevant to this case, if the federal government in the CSA, well, the CSA, we're enforcing the CSA and then the federal government were regulating speech, is that your question? If the federal government was enforcing criminalization of marijuana use- Yes. Would we have a direct conflict between federal and California law and the city? If the federal government was enforcing it- Your argument is, you can comply with both, the state and the city have just decided to not criminalize this. Correct. Is that true if the federal government is actually enforcing? If the federal government was actively enforcing it, we would have a much more difficult argument. You probably also wouldn't have marijuana markets in states. We wouldn't. Absolutely wouldn't. That's what's ironic here. It's not just ironic. The contradictory position of we're going to be very involved in the center of it, the city says. We're going to issue licenses. We're going to get hundreds of thousands of dollars. We're going to get taxes at almost every level from growing, cultivation and sales and licensing. We're going to get tax. We're going to get that. I don't think they're arguing that they're engaged in racketeering, which is a criminal enterprise. I think they're arguing it is okay for us to do this, but do not talk about it. We don't want anybody to hear it and we don't want anybody to know it. See, that type of restriction itself is deceptive and it's not just the effect that is deceptive. It's their actual purpose in that. The purpose of it is we don't want people to know what we're doing. That is repugnant to 44 Liquor Mart. That is repugnant to Central Hudson to hide what the city is doing. And the 44 Liquor Mart cautions against this very type of regulation. So don't talk about what we're doing, but yet they're in the middle of it. And I think, again, it goes to show that they're taking advantage of the fact that the CSA does not preempt that. And I think the court did a good job of talking about, a couple of your honors, talking about Hamani. I mean, Hamani is very, very clear when it talks about it. Justice Gorsh uses the term, states have legalized marijuana. I mean, that's your issue right there. It's legal and we aren't doing anything about it. I appreciate the quote. I think it was you, Judge Friedlander, it may have been you. I can't remember. One of you quoted that we have not just tolerated this, we have fueled it. And that is a fact. And Justice Alito, in his concurring opinion, says, many states have legalized its use and sale. And although possession of the drug remains a federal crime, very few people are convicted of that offense each year. And of course, the opinion details the evolving opinion and the evolving treatment by both Congress, which has taken away funding for that. The DOJ and the Attorney General, which is now, I think, next week, a week from today, will have another hearing, which will consider the decriminalization, if you will, or the same treatment for recreational marijuana as it did in April for medical marijuana. So the ground upon which the city bases it is eroding, and it is eroding quickly. We have a conservative administration and the Attorney General who says, we're tolerating it, we're facilitating it. The states are doing a good job. It says that in the order. We like what the states are doing. And you have the court. You have- Sorry, you're at your time. Could you- Okay. And final thought is you have the Supreme Court justices also coming to that opinion. Thank you. Thank you. I think we had about a minute. Okay. My opponent quoted Justice Alito. Marijuana remains a violation of federal law. And I'd like to address Judge Forrest's question. How do you create a rule that says, yes, federal law makes it illegal. Yes, federal law is concerned about intrastate, as well as interstate shipments and manufacturing of it. But in this case, given the current political winds, we're going to not follow federal law and say, oh, no, this is actually okay. There is no way to draw that rule or that line being consistent with federal law and federal approaches. Gonzales versus Raich makes it clear. Marijuana is still illegal under federal law. And with that, unless the court has further questions, we would submit. Thank you both sides for the helpful arguments. This case is submitted and we're adjourned for the day. All rise. This court for the session is adjourned.
judges: FRIEDLAND, FORREST, DESAI